IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> *ex rel.* JOHN MCLAIN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KBR, INC., ) <br> ) <br> Defendant. ) | Case No. 1:08-cv-499 (GBL/TCB) |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant KBR, Inc.'s Motion to Dismiss Relator John McLain's Complaint for failure to state a claim. (Doc. No. 33.) This case concerns whistleblower allegations related to contractor services for the United States Armed Forces. The issue before the Court is whether the Complaint sufficiently states a cause of action under the False Claims Act without any particularized allegations of (1) a false invoice or claim of payment or (2) a false record or statement material to payment on the contract. The Court holds that the Complaint fails to state a claim because it lacks allegations of any false claims for payment, nor does the Complaint allege a causal link between Defendant's allegedly fraudulent course of conduct and its submission of payment claims to the United States Government. Furthermore, the Court holds the Complaint fails to satisfy Rule 9 because the Complaint lacks particular allegations regarding the times, places, contents, or presenters of any false claims. Accordingly, the Court grants Defendant's Motion to Dismiss.

### I. BACKGROUND

Relator John McLain brings this action on behalf of the United States pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 (2008). (Compl. ¶¶ 5, 8, Doc. No. 1.) Defendant

KBR, Inc., the largest contractor for the United States Army, is an engineering and construction company that provides defense services. (*Id.* ¶ 6.) At the core of this action are the performance of duties and services pursuant to the logistics civilian augmentation program ("LOGCAP")—a U.S. Army initiative using civilian contractors to provide combat support and combat service support. (*Id.* ¶ 11.) Beginning in 1985, the LOGCAP program awarded contracts to companies providing a wide range of logistical services. (*Id.*) The chosen contractors received individual tasks orders setting forth particular tasks to be performed and the deadlines for performing such tasks. (*Id.* ¶ 12.)

In 2001, the Army awarded KBR the LOGCAP III contract, a one-year award with nine one-year renewal options. (*Id.* ¶¶ 14, 18.) LOGCAP III was a performance-based Cost Plus Award Fee contract, whereby the United States paid KBR the amount of costs, a percentage of costs as profit, and potentially more for good performance. (*Id.* ¶ 15.) The contract required KBR's compliance with a number of terms, provisions, and representations set forth in industry standards, Army regulations, KBR documents, and other sources. (*Id.* ¶¶ 17, 19.) The contract imposed various requirements for compliance monitoring. (*Id.* ¶ 20.) These requirements included written quality control plans, an inspection system, record maintenance, a bi-weekly performance report, and annual certifications attesting to conformance with LOGCAP III's provisions. (*Id.* ¶¶ 20-22.)

LOGCAP III incorporated Standard Operating Procedure ("SOP") 7AA, setting forth an Electrical Maintenance Management Plan designed to ensure personnel safety through monitoring and maintenance of potential electrical hazards. (*Id.* ¶ 25.) SOP 7AA required documented, regular testing of ground connections on a quarterly basis for the purpose of monitoring potential hazards. (*Id.* ¶ 27.) Additionally, LOGCAP III also incorporated other

2

provisions specific to compliance with the Occupations Safety and Health Administration ("OSHA") and Iraqi electrical safety guidelines. (*Id.* ¶¶ 29-31.)

In 2005, KBR hired John McLain as an electrician, initially assigning him to Baghdad before assigning him to a military installation at Al-Hillah. (*Id.* ¶ 45.) Upon arriving in in Al-Hillah in late October 2005, he found no equipment available to perform ground resistance testing in accordance with SOP 7AA and other contractual provisions. (*Id.* ¶¶ 46-47.) During an April 21, 2006 inspection, Inspector Leon Ross asked McLain about ground resistance testing specified in SOP 7AA. (*Id.* ¶ 48.) McLain informed Ross that no testing had been done due to a lack of necessary equipment. (*Id.*) Ross's inspection report noted this lack of testing, McLain's reasons for the lack of testing, and other deficiencies. (*Id.* ¶ 49.) McLain participated in an April 24, 2006 conference call that included extensive discussion of the failure to test and the need for necessary equipment. (*Id.* ¶ 50.) Al-Hillah personnel requested the equipment, yet no adequate equipment arrived prior to McLain's October 2007 departure from Al-Hillah. (*Id.* ¶¶ 50, 53.)

On April 28, 2006, McLain sent an e-mail to various supervisors, discussing the testing deficiencies and necessary remedial steps. (*Id.* ¶ 51.) McLain never received a response to these e-mails, and no adequate testing ever occurred prior to his departure. (*Id.* ¶¶ 52-54.) KBR failed to perform the tests, maintain an adequate grounding program, install backup generators, or maintain an available inventory of electrical materials in accordance with LOGCAP III requirements. (*Id.* ¶¶ 55-57.)

In October 2006, KBR personnel began producing documents falsely indicating the implementation of a new testing program. (*Id.* ¶ 59.) At the time, KBR had not performed such testing and lacked the equipment to do so. (*Id.*) Sam Watkins, the electrical foreman at Al-Hillah, directed the production of these logs in order to provide the appearance of compliance

3

with SOP 7AA. (*Id.*) The documents displayed wholly fabricated or inadequate log reports of testing on October 14th, 16th, and 30th of 2006. (*Id.*)

In December 2006, pursuant to an order from KBR headquarters, McLain inspected various electrical systems in Al-Hillah facilities. (*Id.* ¶ 60.) After this inspection, McLain sent an e-mail to his supervisors, including Chief of Operations Roy Lindsey, describing the lack of required electrical grounding and other noncompliance issues with respect to electrical generators in use at Al-Hillah. (*Id.*)

In September 2007, KBR quality control personnel conducted an assessment as part of preparations for an audit by the Defense Contract Management Agency ("DCMA"). (*Id.* ¶ 62.) The resulting report indicated multiple deficiencies. (*Id.* ¶¶ 62-63.) KBR subsequently drafted a corrective measures implementation plan ("CMIP"), designed to outline methods for correcting deficiencies. (*Id.* ¶ 63.) The CMIP referenced both pre-existing and newly discovered noncompliance issues, including those dealing with SOP 7AA due to, *inter alia*, the lack of necessary testing equipment. (*Id.* ¶¶ 64-66.) In response to the CMIP, McLain notified his supervisors, by e-mail, of the history of extensive deficiencies with the monitoring and compliance efforts. (*Id.* ¶¶ 69-70.)

KBR terminated McLain on October 5, 2007. (*Id.* ¶ 72.) After being terminated, he learned of other KBR failures in testing and maintaining electrical equipment under LOGCAP III requirements. (*Id.* ¶¶ 73-76.) Additionally, McLain observed Sam Watkins inform Leon Ross, a quality control inspector, of the lack of proper testing equipment, and thus the inability to perform adequate ground testing, at another Army installation in Iraq. (*Id.* ¶ 77.) Much like at Al-Hillah, KBR employees at this other installation made no attempt to do testing or made attempts using inadequate methods. (*Id.*)

In May 2008, after informing the Defense Contract Management Agency ("DCMA") of the history of deficiencies at Al-Hillah, McLain brought this action pursuant to the FCA. In addition to the facts listed above, the Complaint restates the elements of an FCA claim. (*Id.* ¶¶ 84-87.) On November 5, 2012, Defendant moved for dismissal of the Complaint for failure to state a claim and failure to comply with Rule 9(b)'s heightened pleading requirements for fraud.[1]

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted unless the complaint "state[s] 'a plausible claim for relief'" under Rule 8(a). *Robertson v. Sea Pines Real Estate Cos. Inc.*, 679 F.3d 278, 284 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This "requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *LeSueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d

---

[1] The Complaint originally asserted two claims, the second being retaliatory discharge under the FCA. On November 5, 2012, Defendant filed an unopposed motion to sever and dismiss the retaliation claim pending arbitration. (Doc. No. 32.) This Court granted the Motion on November 9, 2012. (Doc. No. 36.)

462, 466 (4th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

The general pleading standard requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief [that] give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)); *see also Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 8(a)(2). *Twombly* established that the "plain statement" must "possess enough heft"—that is, "factual matter"—to set forth grounds for the plaintiff's entitlement to relief and "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 557, 570. The complaint must contain sufficient factual allegations, taken as true, "to raise a right to relief above the speculative level" and "across the line from conceivable to plausible." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 557, 570). Put another way, the facial plausibility standard requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Robertson*, 679 F.3d at 287 (quoting *Iqbal*, 556 U.S. at 678); *see also Twombly*, 550 U.S. at 556.

"A pleading that offers labels and conclusions[,] a formulaic recitation of the elements of a cause of action[,]" or "naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted)). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Walker v. Prince George's Cnty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (citations omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Accordingly, in

order to survive a Rule 12(b)(6) motion to dismiss, the complaint must present sufficient non-conclusory factual allegations to support reasonable inferences of the plaintiff's entitlement to relief and the defendant's liability for the unlawful act or omission alleged. *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (citations omitted).

**B. Analysis**

The Court grants Defendant's Motion to Dismiss for failure to state a claim for two reasons. First, the Complaint fails to allege the existence of claims presented to the government that included or relied upon a false statement. Second, Relator fails to particularly plead either the existence or contents of a false claim or any connection between Defendant's allegedly fraudulent conduct and the submission of a false claim. The Court examines each of these deficiencies in turn.

**1. Failure to Plead a False Claim**

The Court holds that Relator's Complaint fails to plead each element required to maintain an action pursuant to the False Claims Act. Accordingly, Defendant's Motion is granted.

The False Claims Act, 31 U.S.C. §§ 3729, 3730 (2008),[2] permits private civil litigation against a government contractor under certain circumstances. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (*"Harrison I"*). A private individual may bring a claim against a person who (1) "knowingly presents, or causes to be presented, [to the

---

[2] In 2009, Congress amended the False Claims Act. *See* Fraud Enforcement & Recovery Act of 2009 ("FERA"), Pub. L. 111-21, § 4(a), 123 Stat. 1621 (2009). Congress explained that the amendments "shall apply to conduct on or after the date of enactment [May 20, 2009], except that [] subparagraph (B) of section 3729(a)(1)...shall take effect as if enacted on June 7, 2008 and apply to all claims...that are pending on or after that date." Pub. L. 111-21, § 4(f), 123 Stat. 1625 (2009). Because McLain filed this Complaint on May 16, 2008 seeking relief under § 3729(a), and thus all allegations arose prior to May 20, 2009, the amendments are not relevant to this Opinion and the Court applies the pre-FERA FCA. *See United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 267 n. 1 (5th Cir. 2010) (explaining that FERA only applies to "conduct on or after May 20, 2009" unless § 3729(b) claims are "pending on or after June 7, 2008").

government] a false or fraudulent claim for payment or approval" or (2) "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting 31 U.S.C. § 3729(a)). The statute focuses on liability as to the claim for payment, not the underlying fraudulent conduct. *Harrison I*, 176 F.3d at 785 (citations omitted). "Therefore, a central question in False Claims Act cases is whether the defendant ever presented a 'false or fraudulent claim' to the government." *Id.*; *accord Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1328 (11th Cir. 2002) ("We have repeatedly held that the submission of a false claim is the *sine qua non* of a False Claims Act violation.") (internal quotations omitted).

To prove an FCA claim, a plaintiff must demonstrate: (1) "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim')." *Wilson*, 525 F.3d at 376 (quoting *Harrison I*, 176 F.3d at 788). This four-part test applies regardless of whether a plaintiff seeks the attachment of liability pursuant to § 3729(a)(1) or § 3729(a)(2). *See U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 916 (4th Cir. 2003) ("*Harrison II*") (identifying the applicability of the *Harrison I* test after defining both sections of the statute).

Relators in FCA actions generally advance their claims by one of two theories: fraudulent inducement or false certification. Fraudulent inducement occurs where one receives a government contract or benefit on the basis of false statements or conduct. *Harrison I*, 176 F.3d at 787. False certification cases arise where compliance with a statute or regulation is a prerequisite to obtaining payment and the defendant affirmatively certified the compliance. *Id.* at 786. Relator's Complaint in this case appears to rest upon a false certification theory.

However, because *Harrison I* clarifies that the aforementioned four elements are required under either theory, the Court finds the Complaint deficient. The Complaint is dismissed because it fails to allege the submission of claims to the government, the existence of any false certification inducing payment by the government, or that allegedly falsified testing logs were material to any claims for payment.

### 1. Failure to Allege Submission of Any Claims or Invoices

The Court holds that the Complaint fails to allege any false claim submitted by KBR to the Government and, thus, fails to survive this 12(b)(6) Motion. As *Harrison I* indicated, FCA claims center on the presentation of a *fraudulent claim for payment*, not simply an engagement in some fraudulent conduct. 176 F.3d at 785. Defendant correctly recognizes that the Complaint's failure to allege any claims for payment is fatal to the FCA claim here. (Def.'s Mem. Supp. Mot. Dismiss at 6, Doc. No. 34.) While Relator sufficiently alleges fraudulent action—falsifying log entries to show electrical testing when none occurred—he fails to allege the submission of a claim by KBR. Furthermore, Relator fails to allege how this falsification of records may have been included or referenced in a claim for payment. The only references to invoices or payments are conclusory statements at the beginning and end of the Complaint, where Relator recites the elements of the FCA. (Compl. ¶¶ 1-3, 84-86.) Because these "threadbare recitals" of the FCA elements cannot defeat a 12(b)(6) motion, the Court disregards these statements and examines the non-conclusory portion of the Complaint. *See, e.g., Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

The Court finds unpersuasive Relator's attempt to avoid this plain requirement of the FCA. Balking at the suggestion that failure to plead individual payment claims transforms this into merely a breach of contract claim, Relator considers this argument "a non-sequitur." (Pl's.

9

Opp'n to Def.'s Mot. Dismiss at 13-14 [hereinafter "Pl.'s Opp'n"].) To the contrary, *Harrison I* explicitly deems the presence of a claim to be the *central question* in an FCA case. 176 F.3d at 785. Relator cites a number of cases for the proposition that an FCA claim may be established where one merely collects payment one knows he is not entitled to receive. (Pl.'s Opp'n at 14.) However, both *Rodriguez v. Our Lady of Lourdes Med. Ctr.*, 552 F.3d 297, 303 (3d Cir. 2008), and *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1169 (10th Cir. 2010), considered an "implied false certification" theory to support liability solely on the basis of receiving payment. The Fourth Circuit has not adopted this theory.[3] *See Harrison*, 176 F.3d at 786-87, 787 n.8 (explaining that *U.S. ex rel. Berge v. Bd. of Trustees of Univ. of Ala.*, 104 F.3d 1453 (4th Cir. 1997), which held "there can be no False Claims Act liability for an omission without an obligation to disclose, also makes questionable an implied certification claim in the Fourth Circuit"). As a result, any fraudulent inducement action under the FCA must allege a submitted claim or invoice that contains a false statement. *See Wilson*, 525 F.3d at 376. Without any reference to claims or payments, the allegations here comprise merely a breach of contract claim.

As an additional matter, the Complaint cannot support an inference that the creation of false logs infers that KBR received payment for testing that never took place. The Complaint broadly alleges that KBR sought payment for services that "did not qualify for payment." (Compl. ¶ 84.) Relator further argues that, because the nature of the LOGCAP III contract was to provide support to military personnel, "KBR's claims are false even if billed costs were

---

[3] Additionally, the relators in *Lemmon* alleged "dates, numbers, and amounts of Envirocare's requests for payments," allegations that the court found strongly indicated the existence of submitted claims. 614 F.3d at 1169. No similar allegations appear in Relator's Complaint.

10

accurate because the Government did not agree to pay KBR" to pick and choose which tasks to perform. (Pl.'s Opp'n at 19-21.)

Even if Relator is correct in stating that KBR's failure to fulfill certain obligations constitutes a breach of contract, the FCA is limited only to payment of false claims. Whether KBR provided satisfactory services is no concern of the FCA so long as KBR did not bill for tests it never performed. An examination of *United States v. Menominee Tribal Enters.*, 601 F. Supp. 2d 1061 (E.D. Wis. 2009), upon which Relator relies, underscores this point. In *Menominee*, the defendant, hired to maintain roads and nearby forests, charged the government for a given amount of hours worked. *Id.* However, the defendant worked for less time than the invoices indicated. *Id.* The defendant argued that it actually incurred expenses equal to the amount charged in the invoice, thus whether the invoices reflected the proper amount of hours spent on clearing trees or maintaining roads was immaterial since the invoice accurately represented its expenses. *Id.* The court rejected this argument, stating that the FCA focused on whether false information—hours spent on a given task—was material to the payment of a claim. *Id.* at 1072-73. Thus, an FCA claim could stand because the claims included false information material to the decision to pay. *Id.* at 1073.

In contrast, Defendant cannot be said to have submitted an invoice exaggerating or misstating the amount of work it performed. As Defendant noted, this is the crucial distinction between *Menominee* and the issue before this Court. (Def.'s Reply at 9.) However, "if KBR had tried to get paid for work it had *not* done…then plaintiffs could have brought and argued such a claim straight-forwardly under the FCA." *Wilson*, 525 F.3d at 379 (citing *Harrison I*, 176 F.3d at 786) (emphasis in original). Without any allegations that KBR actually billed for unperformed tests, the Court finds *Menominee* inapposite and Relator's allegations insufficient.

Nothing in the Complaint alleges the filing of a claim. No allegation infers the filing of a claim *on the basis of the alleged false conduct*. In omitting the *sine qua non* of an FCA action, Relator fails to state a claim.

**2. Failure to Demonstrate False Certification**

Nor can Relator avoid dismissal here by relying on decisions premised upon false certification, as the Complaint fails to allege a certification requirement essential to the submission of a claim. False certification arises where (1) compliance is a prerequisite to payment, (2) the defendant falsely certified compliance, and (3) the false certification induced government payment. *U.S. ex rel. Godfrey v. KBR, Inc.*, 360 Fed. App'x 407, 411-12 (4th Cir. 2010) (citing *Harrison I*, 176 F.3d at 786). Fatal to such a theory is an absence of any allegation that contract payments are contingent upon either representations by the defendant or compliance with conditions alleged within a complaint. *Harrison I*, 176 F.3d at 789-90. *See also Godfrey*, 360 Fed. App'x at 412; *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 605 (7th Cir. 2005) (affirming dismissal because the complaint lacked any allegation that the certification at issue was a condition of payment).

Relator's Complaint omits any indication that payments to KBR were conditioned upon the allegedly falsified certifications. Undoubtedly, the Complaint makes clear that SOP 7AA required testing in compliance with regulatory standards and that KBR employees forged testing logs where no such testing occurred. (Compl. ¶¶ 25, 27, 59.) The Complaint explicitly alleges the purpose of the fraudulent entries was to provide the appearance of compliance. (*Id.* ¶ 59.) What the Complaint does not allege is that the LOGCAP III contract contained a provision conditioning payment specifically upon compliance with SOP 7AA or the submission of accurate logs. Nor does the Complaint in any way connect these compliance reports to any claims for

12

payment. As stated in Paragraph 59 of the Complaint, the logs were sent to and approved by KBR quality control personnel for the purpose of showing compliance. Nowhere does Relator demonstrate these forgeries traveled beyond the quality control officials, let alone to anyone processing claims for payment. Indeed, at oral argument on this Motion, Relator conceded that the logs were not submitted for contract payment. Therefore, the allegations cannot proceed under a false certification theory.

### 3. Failure to Demonstrate Materiality

Furthermore, even if the Court were to accept as sufficient the fleeting references to claims for payment,[4] Relator fails to show the allegedly fraudulent conduct was material to the submission or payment of claims. The third element of a fraudulent inducement claim—materiality—arises where a statement "has a natural tendency to influence agency action or is capable of influencing agency action." *Wilson*, 525 F.3d at 378 (quoting *Berge*, 104 F.3d at 1460). Thus, the materiality of the allegedly fraudulent compliance logs in this case "depends on whether [the logs] could have influenced the government's decision to award" a contract or pay funds to KBR. *Id.* (citations omitted). Relator fails to allege any causal connection or link between the compliance logs and either the submission or payment of a claim. If these logs are not seen by anyone who makes or processes a claim for payment, then the logs cannot influence any action. Without this connection, the Complaint fails to provide a plausible basis upon which to find that the testing logs and compliance reports are in any way material to a payment by the government. Devoid of any allegations suggesting these logs are reviewed by individuals who process claims or authorize payment, Relator's Complaint must be dismissed for this reason as well. *Cf. Harrison II*, 352 F.3d at 916 (finding materiality where "Westinghouse was required to

---

[4] As indicated earlier, the threadbare recitals of FCA elements, without any other allegations within the four corners of the Complaint concerning invoices or claims, cannot meet the pleading requirements. *See, e.g., Walters*, 684 F.3d at 439 (citing *Twombly*, 556 U.S. at 678).

submit the []certification to [the Department of Energy] as a prerequisite to" the awarding of a contract).

**B. Failure to Plead Fraud With Particularity**

Even if Relator pleaded the basic FCA elements, the Court holds that the Complaint fails to sufficiently plead with particularity any false claims or invoices submitted for payment. The Defendant's Motion to Dismiss must be granted because the Complaint fails to meet Rule 9(b)'s heightened pleading requirements.

In cases involving fraud, plaintiffs "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In the FCA context, this requires pleading "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Wilson*, 525 F.3d at 379 (citing *Harrison I*, 176 F.3d at 784) (internal quotations omitted). This typically entails "the 'who, what, when, where, and how' of the alleged fraud." *Id.* (quoting *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir.2003)); *see also Hopper*, 588 F.3d at 1329. Failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). *Dunn v. Borta*, 369 F.3d 421, 426 (4th Cir. 2004) (citing *Harrison I*, 176 F.3d at 783 n. 5).

The Court finds a fatal flaw in the Complaint because Relator does not allege the existence of a false claim or a connection between false reports and the submission of a claim. In the Fourth Circuit, an FCA allegation fails where the complaint omits allegations that a transaction materially considered or relied upon false statements. *See Wilson*, 525 F.3d at 379-80 (affirming dismissal where plaintiff's failure to connect fraudulent action with payment "[did] not meet the minimum standards established by Rule 9(b)"); *U.S. ex rel. Jones v. Collegiate Funding Servs., Inc.*, 469 Fed. App'x 244, 259 (4th Cir. 2012) (finding dismissal pursuant to

14

Rule 9(b) proper where relators "have made no allegation as to any particular transactions between [defendants] and the government in which the [allegedly false] certifications were material"). The Fifth Circuit has also found demonstration of such a nexus necessary to survival of an FCA claim against a Rule 12(b)(6) challenge. *See U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191-92 (5th Cir. 2009) (finding adequate particularity where the relator's allegations that defendant filed a claim to get paid referenced face-to-face meetings with falsifiers as well as dates of billing falsification).

Relator fails to allege any specific transaction between Defendant and the Government, let alone a transaction materially relying upon the falsified October 2006 reports. The lack of such connection leads the Court to reject Relator's argument that "the relator is not required to put forth *evidence* in a Complaint." (Pl.'s Opp'n at 29 (emphasis in original).) Requiring an allegation demonstrating plausibility is not the same as requiring Relator to plead evidence. As noted above, *Harrison I* unequivocally declared the presentation of a "false or fraudulent claim to the government" to be the "central question in False Claims Act cases." 176 F.3d at 785. Such claim must be "made in a transaction involving a call on the U.S. fisc." *Id.* at 788. Thus, some transaction or claim for money must be pleaded in order to demonstrate a "call on the U.S. fisc." *See id.* at 792 (explaining that "False Claims Act liability...require[s] the submission of a false claim").

Relator further argues that "[t]he Complaint also connects the false statements to efforts to induce the Government to pay under the contract." (Pl.'s Opp'n at 29-30.) However, Relator cites to two sections of the Complaint that lack any allegations regarding claims for payment. Furthermore, neither of those paragraphs, or any other, indicates that (1) claims for payment

necessarily required a certification of compliance with SOP 7AA or any other provision or (2) SOP 7AA compliance is a prerequisite for payment pursuant to LOGCAP III.

The Court also rejects Relator's argument that a complaint may satisfy Rule 9(b) even in the absence of identifying specific claims for payment. Relator's argument relies on the Fifth Circuit's *Grubbs* decision. The court in *Grubbs* held that a relator's complaint, if it cannot allege the details of an actually submitted false claim, "may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." 565 F.3d at 190. Similarly, Relator relies on the Seventh Circuit decision in *U.S. ex rel. Lusby v. Rolls Royce Corp.*, 570 F.3d 849 (7th Cir. 2009), for the proposition that production of invoices is not necessary at the pleading stage. *Id.* at 854. Relator's reliance on these decisions crumbles because the Complaint lacks any allegations of a scheme to submit *false claims*. Instead, the scheme alleged focused on falsifying compliance testing and results. (*See* Compl. ¶ 59 (describing the scheme to provide a false appearance of compliance with SOP 7AA).) Simply put, the Complaint's deficiency is not a failure to produce invoices but rather a failure to plead any specific payments or claims by KBR or even sufficient facts to infer the existence of such a scheme. *See Grubbs*, 565 F.3d at 190-91 (finding that pleading of "dates and descriptions of recorded, but unprovided, services and a description of the billing system" provided "a strong inference that [the false] claims were submitted and thus "gives defendants adequate notice of the claims" so as to survive challenges under Rule 12(b)(6) and Rule 9(b)).

A brief overview of *Grubbs* easily distinguishes the allegations in that case from the one before the Court. In *Grubbs*, the *qui tam* complainant, Dr. Grubbs, worked at a hospital in Texas. 565 F.3d at 184. Grubbs alleged that other doctors disclosed to him a fraudulent billing

scheme where doctors would see patients "as needed" but bill the encounters as "regular 'face-to-face' hospital visit[s]." *Id.* Grubbs further alleged that the nursing staff at the hospital attempted to "assist him in recording face-to-face physician visits that had not occurred."[5] *Id.* Additionally, "the complaint aver[red] at least one overt act of false billing for each doctor." *Id.* at 184-85. Although he did not plead the specific contents of the claims, Grubbs identified facts demonstrating falsity, such as a doctor billing for psychotherapy services not actually provided to a patient. *Id.* at 185. The Fifth Circuit found sufficient Grubbs's allegations regarding the scheme and the strong inference that those false claims were actually submitted, despite a lack of allegations regarding the contents of any fraudulently filed claim. *Id.* at 190-91.

Unlike *Grubbs*, Relator fails to allege any facts regarding a scheme for payment. The only fraudulent scheme is that of falsifying reports. The Complaint remains devoid of how these reports could be materially connected to any scheme involving claims for payment. There is a significant difference between pleading the *details* of a false claim and pleading facts to infer the *existence* of a false claim. Any relaxation with respect to pleading details of false claims is not to be equated with eliminating the requirement that a false claim be pled. *See, e.g., U.S. ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) ("We hold that *pleading an actual false claim* with particularity is an *indispensable element* of a complaint that alleges an FCA violation in compliance with Rule 9(b).") (emphasis added). Even alleging "some details of the claims process" could meet the Rule 9(b) requirements. *See Grubbs*, 565 F.3d at 190 (calling for "reliable indicia that lead to a strong inference that claims were actually submitted"); *Lemmon*, 614 F.3d at 1172 ("[C]laims under the FCA need only show the specifics of a fraudulent scheme and provide an adequate bases for a reasonable inference that *false claims*

---

[5] On the basis of these events, Grubbs brought an action pursuant to the presentment provision and false record or statement provision of the FCA, 31 U.S.C. §§ 3729(a)(1) and (a)(2), the same provisions at issue here. 565 F.3d at 184.

*were submitted as part of that scheme.*") (emphasis added); *U.S. ex rel. Jones v. Collegiate Funding Servs., Inc.*, 2011 WL 129842, at *17 (E.D. Va. Jan. 12, 2011), *aff'd by* 469 Fed. App'x 244 (4th Cir. 2012) (citations omitted). Relator's argument fails to appreciate the necessity that the scheme described must be one of the claims process, not the underlying fraudulent act. *See Harrison I*, 176 F.3d at 785 (citations omitted). Because Relator fails to identify a single false claim or some details of a scheme that touches upon and affects the claims process, the Complaint fails to comply with Rule 9(b). *See Jones*, 469 Fed. App'x at 259 (affirming the district court's dismissal where relators failed to allege any particular transactions between the defendant and the government in which the allegedly false certifications were material).

In much the same manner, Relator's reliance on *Lusby* is misplaced. In *Lusby*, payment required the submission of a certificate with each request for payment from the Government. 570 F.3d at 854. The Seventh Circuit found that Lusby's knowledge of shipments and payments sufficed to state a claim, even though Lusby "[did] not have access to the paperwork," because the former provided a plausible inference that the defendant submitted a claim. *Id.* at 854. Relator here offers no allegations related to the claims process or how the testing falsifications played a role in such process. As this Court previously noted, *Lusby* offers no support to *qui tam* complainants who "failed to identify any specific defaults, payments, dates, or other indicia from which a specific claim for payment can be reasonably inferred to have been submitted." *Jones*, 2011 WL 129842, at *18 (citing *Lusby*, 570 F.3d at 854). Without submitting some details of submitted claims, or even the strongly suggestive allegations accepted in *Grubbs*, the Complaint falls short of Rule 9(b)'s requirements. *Cf. Lemmon*, 614 F.3d at 1169 (finding that relators' allegations of "dates, numbers, and amounts of Envirocare's requests for payments" strongly indicated the existence of submitted claims.). Therefore, even if the Complaint adequately

pleaded the basic FCA elements, the Relator fails to plead with particularity as required by Rule 9(b).

## III. CONCLUSION

The Court grants Defendant's Motion to Dismiss for failure to state a claim because Relator's Complaint lacks allegations as to the existence and submission of a false claim submitted for payment, as well as any regarding how Defendant's allegedly false conduct would have been material to any payment by the Government. For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant KBR, Inc.'s Motion to Dismiss for failure to state a claim (Doc. No. 33) is **GRANTED**. Accordingly, Relator's Complaint is hereby **DISMISSED without prejudice.**

**IT IS SO ORDERED.**

The Clerk is directed to forward a copy of this Order to counsel.

ENTERED this 27th day of February, 2013.

Alexandria, Virginia
2/27/2013

/s/
Gerald Bruce Lee
United States District Judge