IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

JOHN MCLAIN,                          )
                                      )
                  Plaintiff,          )
                                      )     CASE NO.  1:08-CV-499 (GBL/TCB)
            v.                        )
                                      )
KBR, INC.,                            )
                                      )
                  Defendant.          )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Kellogg Brown & Root Services, Inc.

("KBR")'s Motion to Dismiss for Failure to State a Claim (Doc. 73). This case involves

whistleblower allegations related to contract work performed by KBR for the United States

Army.

There are two issues before the Court. The first issue is whether the Amended Complaint

plausibly states a cause of action under the False Claims Act, 31 U.S.C. § 3729 *et seq*., where

Relator John McLain ("McLain") alleges that KBR (1) created false logs and inspection reports

for electrical tests that were never performed or inadequately performed, (2) submitted false

certifications of compliance with contractual testing requirements, and (3) submitted invoices to

the Government for the provision of electrical services. The Court holds that the Amended

Complaint fails to plausibly state a claim because the materiality of the false logs, reports, and

certifications is inadequately pled and the false invoices are not pled with Rule 9(b) particularity.

The second issue is whether the Amended Complaint should be dismissed with prejudice

where McLain received notice of his pleading defects, yet repeated those defects in amending his

complaint. The Court holds that the Amended Complaint should be dismissed with prejudice

because the severity and consistency of the defects indicates that further attempt at amendment would be futile. Accordingly, the Court **GRANTS** KBR's Motion to Dismiss and **DISMISSES** the Amended Complaint **WITH PREJUDICE**.

## II. BACKGROUND

Relator John McLain ("McLain") brings this suit on behalf of Plaintiff the United States of America against Defendant Kellogg Brown & Root Services, Inc. ("KBR") pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"). (Doc. 68, ¶ 1.) McLain worked for KBR as an electrician in Al-Hillah, Iraq from October 2005 to October 2007. (*Id.* ¶ 9.) KBR was providing logistical support to U.S. troops in Iraq as part of the Government's Logistics Civilian Augmentation Program ("LOGCAP"). (*Id.* ¶¶ 3, 14.) Under LOGCAP, the Government would award a general contract to a private contractor like KBR and then issue separate task orders for specific work to be performed under the contract. (*Id.* ¶ 15.)

In 2001, the Government awarded the LOGCAP III contract to KBR. (*Id.* ¶ 17.) LOGCAP III was a general contract for the provision of logistical support in Iraq. It was a one-year contract with nine one-year renewal options, and it operated on a "Cost Plus Award" basis, meaning that KBR would be paid 1 percent of its costs as profit and up to an additional 2 percent for good performance. (*Id.* ¶ 18.)

LOGCAP III and its task orders required KBR to maintain electrically safe facilities and to generate electricity in conformity with government and industry standards. (*Id.* ¶ 19.) LOGCAP III also required KBR to devise a Standard Operating Procedure ("SOP") for each of its major functions. (*Id.* ¶ 26.) In response, KBR developed and submitted Standard Operating Procedure No. 7AA ("SOP 7AA"). (*Id.*) SOP 7AA required KBR, among other things, to perform regular ground-resistance testing. (*Id.* ¶ 27.) Ground-resistance testing ensures safe

2

electrical grounding, meaning that electrical circuits are properly connected to the ground and will not travel in unpredictable directions, mitigating any electrocution risk. SOP 7AA was incorporated into LOGCAP III as a contractual duty owed by KBR. (*Id.* ¶ 27.)

In the fall of 2005, KBR assigned McLain to work as an electrician at the U.S. Mission Iraq Central ("USMI Central") in Baghdad. Three weeks later, McLain was transferred to the U.S. Mission Iraq in Al-Hillah ("USMI Al-Hillah"). (*Id.* ¶ 48.) While there, McLain noticed that KBR did not perform ground-resistance testing and in fact lacked the equipment to perform the testing. (*Id.* ¶ 50.) On April 21, 2006, McLain told Leon Ross, a KBR quality-control inspector, of the problems. (*Id.* ¶ 49.) Later, on December 12, 2006, McLain sent an email to KBR's Chief of Operations Roy Lindsey and several others, stating that "all substation transformers and main distribution boards in Al-Hillah required grounding." (*Id.*) In the email, McLain noted that the lack of grounding put KBR in violation of SOP 7AA and posed a safety risk. (*Id.*)

In September 2007, the Defense Contract Management Agency ("DCMA") audited USMI Al-Hillah, the second audit since McLain's arrival. (*Id.* ¶ 63.) KBR prepared a quality report for the audit, identifying multiple deficiencies in its electrical grounding. (*Id.* ¶ 64.) The report observed that documentation of ground-resistance testing was incomplete and inaccurate and that USMI Al-Hillah had no ground-resistance testers on site. (*Id.* ¶ 66.) KBR also issued a Corrective Measures Implementation Plan ("CMIP"), outlining the steps it would take to correct the deficiencies. (*Id.*) McLain emailed responses to the CMIP to David Fullerton, Roy Lindsey, and other supervisors on September 19, 2007 and September 30, 2007. In the responses, McLain recounted his efforts to report grounding deficiencies to KBR and reiterated that violations of SOP 7AA were occurring. McLain also explained the grounding deficiencies to DCMA Officer Captain Malone during a September 27, 2007 follow-up inspection. (*Id.* ¶ 72.)

The next year, on September 11, 2008, DCMA issued a Corrective Action Request ("CAR") to KBR. The CAR noted "grounding and bonding deficiencies in the performance on the LOGCAP contract." (Doc. 68-7, at 2.) The CAR also stated that "the Government found systemic KBR failures to properly ground and bond facilities—failures that contributed to theater personnel receiving shocks in KBR maintained facilities on average once every three days since data was available in Sept. 2006." (*Id.* at 3.)

## A. Submission of False Claims

McLain alleges that in October 2006, Sam Watkins and other KBR personnel began fabricating documents to show that KBR had implemented a program of ground-resistance testing. (Doc. 68, ¶ 53.) These documents included logs from tests purportedly conducted on October 14, 16, and 30, 2006, as well as a January 2008 technical inspection report for Radwaniyah Palace Complex falsified by copying reports from previous years. (*Id.* ¶ 54.) McLain also alleges that KBR submitted invoices to the Government for work performed under LOGCAP III. (*Id.* ¶ 76.) On or about September 11, 2007, KBR submitted Invoice #0709304UT126 consisting of "approximately 269 pages, most of which set out several dozen itemized 'labor & non labor' goods or services, including electrical services." (*Id.* ¶ 77.) McLain also alleges that KBR submitted Invoices #0709340UT121, #0709340UT129, #0709340UT122, #0709340UT124, #0709340UT125, and #0709340UT128, but does not allege whether the invoices were for electrical services. (*Id.*)

## B. False Certification Claims

KBR was required to submit "Annual Certifications and Representations" in which KBR "attest[ed] to conformance with [KBR's] full range of contractual obligations." (*Id.* ¶ 23.) KBR submitted the Annual Certification on a yearly basis, including on October 26, 2007. (*Id.* ¶ 56.) KBR also used a Form 1034 with Instructions for each invoice submitted to the Government.

4

Each signed form stated that "all payments requested are for appropriate purposes and in accordance with the agreements set forth in the contract."[1] (*Id.* ¶ 57.)

## III. PROCEDURAL HISTORY

McLain filed this action on May 16, 2008. (*See* Doc. 74.) KBR moved to dismiss the original complaint on November 5, 2012. (*See id.*) The Court granted KBR's motion on December 18, 2012, dismissing the original complaint without prejudice. The Court issued a Memorandum Opinion and Order stating its reasons for the dismissal on February 27, 2013. (*See id.*) McLain filed a Motion to Reopen the Case and for Leave to File an Amended Complaint on December 20, 2013. (*See* Doc. 50.) The Court granted the motion on January 29, 2014, (*see* Doc. 67), and on February 26, 2014, KBR filed its motion to dismiss the amended complaint (*see* Doc. 73). KBR's motion to dismiss the amended complaint is now properly before the Court.

## IV. STANDARD OF REVIEW

"To survive a 12(b)(6) motion, a complaint must contain sufficient factual matter accepted as true to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing the sufficiency of a complaint under Rule 12(b)(6), the court accepts all well pled facts as true and construes the facts in the light most favorable to the plaintiff. *Nemet Chrevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts." *Id.*

---

[1] KBR argues that the Amended Complaint misquotes Form 1034. According to KBR, Form 1034 reads as follows: "Pursuant to the authority vested in me, I certify that this voucher is correct and proper for payment." (Doc. 74, at 11–12.) Because the Court must take McLain's well-pled factual allegations as true, the Court does not resolve this dispute and presumes the accuracy of McLain's quotation.

"A claim has facial plausibility when it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. A "[p]laintiff must nudge [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 569. Finally, the court may take judicial notice of facts and "consider documents incorporated into the complaint by reference" if their authenticity is not disputed. *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, No. 12-2513, 2014 WL 961560, at *2 (4th Cir. Mar. 13, 2014) (internal quotations omitted).

## V. DISCUSSION

The Amended Complaint alleges that KBR submitted claims for payment to the Government, and it advances two theories for why the claims were "false or fraudulent" within the meaning of the False Claims Act ("FCA"): First, the claims were rendered false or fraudulent by KBR's creation of false logs and a false inspection report in October 2006 and January 2008 respectively. Second, the claims were false because they were accompanied by false certifications of contractual compliance. The Court finds that neither theory survives KBR's Rule 12(b)(6) challenge. Accordingly, the Court **GRANTS** KBR's Motion to Dismiss and **DISMISSES** the Amended Complaint.

The Court reaches this conclusion for three reasons. First, the Amended Complaint does not allege a factual connection between the false records and the Government's decision to pay. Thus, the materiality of the false records is not sufficiently pled. econd, the Amended Complaint alleges no facts to suggest that the Government made certifications of contractual compliance a prerequisite to payment. Thus, a false certification is not sufficiently pled. Third, the Amended Complaint fails to satisfy Rule 9(b) because not a single false claim is identified with particularity. Although McLain identifies specific invoices submitted to the Government,

McLain fails to allege the falsity of those invoices beyond alleging a set of conclusory statements. Moreover, McLain fails to allege the "who, what, when, where and how" of the invoices, alleging that invoices were submitted and that one invoice was for "labor & non labor goods . . . including electrical services."

### A. No Facts Establish the Materiality of the False Logs and Inspection Report to the Government's Decision to Pay.

The Court begins by finding the materiality of the false logs and inspection report inadequately pled. Because McLain has not alleged a causal nexus between the false records and the Government's decision to pay, it is implausible that the false records influenced, or could have influenced, the Government's decision to pay.

To establish liability under the FCA, a qui tam relator must prove "(1) that the defendant made a false statement or engaged in a fraudulent course of conduct; (2) such statement or conduct was made or carried out with the requisite scienter; (3) the statement or conduct was material; and (4) the statement or conduct caused the government to pay out money or to forfeit money due." *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 913 (4th Cir. 2003) ("*Harrison II*"). A false statement is material when it has a "natural tendency to influence agency action or is capable of influencing agency action." *Id.* at 914 (quoting *United States ex rel. Berge v. Bd. of Trustees of Univ. of Ala.*, 104 F.3d 1453, 1460 (4th Cir. 1999)). The materiality requirement focuses on the potential effect a false statement would have on the government, not on the actual effect when the government discovered the falsity. *Harrison II*, 352 F.3d at 916–17.

The false logs and inspection report do not give rise to FCA liability because McLain has alleged no facts linking those records to the Government's decision to pay. McLain alleges that KBR falsified ground-resistance testing logs and an inspection report "to provide the false

7

appearance that KBR was complying with SOP 7AA (and the incorporated standards)." (Doc. 68, at 53.) However, McLain never alleges that the Government used those records or other, similar records when making the decision to pay KBR. Put succinctly, McLain alleges that false records were made but not that those records accompanied KBR's claims for payment or even that the officials responsible for payment reviewed the records. Because McLain has not tied the false records to the Government's decision to pay, the Court finds implausible McLain's suggestion that the false records could have influenced the Government's decision to pay. Accordingly, the materiality of the false records is inadequately pled.

### B. No Facts Establish that the Government Made LOGCAP III Compliance a Prerequisite for Payment.

Next, the Court finds that McLain has not plausibly pled the Form 1034 and the Annual Certifications were false certifications because the Amended Complaint contains no facts showing that the Government made compliance with LOGCAP III a prerequisite for payment.

Mere noncompliance with a statute, regulation, or contract will not result in liability. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 786–87 (4th Cir. 1999) ("*Harrison I*"). Liability only exists where compliance with a "particular statute, regulation or contractual term" is a prerequisite for payment and the "government payee falsely certifies compliance with [the] particular statute, regulation or contractual term." *See United States ex rel. Conner v. Salina Reg. Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008) (quotation omitted).

There are no facts in the Amended Complaint to establish that the Government conditioned payment on KBR's compliance with LOGCAP III. The Amended Complaint only states that "payments made under the contract were conditioned upon compliance with the material terms of the contractual requirements" and "[p]ayments for electrical services under the

contract were conditioned upon compliance with SOP 7AA." (Doc. 77, at 22.) These conclusory statements are inadequate to plead a false certification.

The certification themselves do not expressly state that payment was conditioned on LOGCAP III compliance. Form 1034 merely states that "all payments requested are for appropriate purposes and in accordance with the agreements set forth in the contract." (Doc. 68, ¶ 57.) The Annual Certification only attests "to [KBR's] conformance with its full range of contractual obligations." (*Id.* ¶ 23.) Because "the express certification does not state that compliance is a prerequisite to payment," the Court must turn to the underlying contracts "to surmise if they make the certification a condition of payment." *See Conner*, 543 F.3d at 1218. The Amended Complaint, however, points to no term in LOGCAP III or its incorporated standards, which condition payment on contractual compliance.

Moreover, the certifications contain only general sweeping language. By arguing that these certifications create FCA liability, McLain argues that any failure by KBR to comply with any provision of LOGCAP III renders the certifications false and the payments to KBR fraudulent. *See id.* at 1219. In essence, McLain argues that *any* deviation from the terms of LOGCAP III—no matter how infinitesimal—would have caused the Government to stop paying KBR. The Court is hard-pressed to accept that the Government would have made perfect compliance with LOGCAP III a condition of payment, especially given the absence of facts suggesting that the Government made any compliance a condition of payment. *See id.*

Accordingly, the existence of a false certification is not adequately pled.

**C. McLain Has Not Alleged the False Claims with Rule 9(b) Particularity.**

Lastly, the Amended Complaint fails the particularity requirement of Rule 9(b). McLain identifies specific invoices submitted to the Government but, fatally, he fails to allege the "who,

9

what, when, where, and how" of those invoices. As a result, the Amended Complaint suffers the additional flaw of failing to establish that the specific invoices were in fact false.

Rule 9(b) requires that a complaint alleging fraud identify "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison I*, 176 F.3d at 785 (quotation omitted). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quotation omitted). Because "[t]he statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment,'" it is the false claims which must be pled with particularity. *Harrison I*, 176 F.3d at 785 (quoting *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)).

Here, McLain alleges that KBR submitted seven invoices, at least one of which was for electrical services. Because the Amended Complaint does not state whether the other six invoices were for electrical services, the Court finds as a threshold matter that those six invoices have not been pled with particularity. In regards to Invoice #0709304UT126, the invoice alleged to be for electrical services, the Court finds McLain's pleading of this invoice still deficient under Rule 9(b).

McLain pleads in regards to this invoice: "KBR submitted one such invoice, invoice # 0709304UT126, on or about September 11, 2007. The invoice consisted of approximately 269 pages, most of which set out several dozen 'labor & non labor' goods or services, including electrical services." (Doc. 68, at ¶ 77.) Crucially, McLain fails to plead what specific services were billed in the invoice. As KBR's duties involved "design, furnishing, installation and maintenance of electrical facilities," (Doc. 68, ¶ 24), the services covered by the invoice could be

10

for any of a variety of services. Moreover, McLain has failed to allege that the invoice was, in fact, false. Without an allegation as to what was specifically billed, the Court cannot discern what made the invoice false—for example, that the invoice was for a test never conducted or a test conducted in violation of LOGCAP III.

McLain argues on the basis of the Fourth Circuit's decision in *Harrison I* that the falsity of a specific invoice need not be alleged. (*See* Doc. 77, at 18.) *Harrison I* did suggest that a claim need not be in and of itself false but it did so in the context of FCA fraudulent-inducement claims. In *Harrison I*, the Fourth Circuit analyzed several instances of courts finding FCA liability for claims that "were not in and of themselves false" and noted that, in those cases, "False Claims Act liability attached . . . because of the fraud surrounding the efforts to *obtain* the contract or benefit status, or the payments thereunder." *Harrison I*, 176 F.3d at 788 (emphasis added); *see also United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 472 F. Supp. 2d 787, 797 (E.D. Va. 2007) (noting that "liability for fraudulent inducement attaches to *all* claims submitted to the government" (internal quotation marks omitted) (emphasis added) (citing *Harrison I*, 176 F.3d at 787)).

Fraudulent inducement occurs where the defendant is awarded a government contract or benefit on the basis of false statements or conduct. *Harrison I*, 176 F.3d at 787. Under this theory of liability, the fraud which induced the awarding of the contract touches all claims for payment under the contract, making the claims false even if they are not independently false. The Amended Complaint, however, does not support a theory of fraudulent inducement because a fraudulent-inducement claim, like all other FCA claims, require a material false statement or fraudulent course of conduct. *See Wilson*, 525 F.3d at 376 (reciting the elements of a fraudulent-

inducement claim). And here, neither the materiality of the false records nor the false certification is adequately pled.

And even if McLain had alleged the falsity of the invoices, he still has not alleged the "who, what, when, where, and how" of the invoices. There is no allegation as to who submitted the invoice to the Government, what specific services were billed in the invoice, or when and where the services were performed. Accordingly, the Amended Complaint fails to meet the particularity requirement of Rule 9(b).

### D. The Court Denies Leave to Amend and Dismisses with Prejudice.

Lastly, the Court DENIES McLain leave to amend and DISMISSES the Amended Complaint WITH PREJUDICE. "In the Eastern District of Virginia, an amendment may be considered futile where Plaintiffs have previously had two full opportunities to plead their claim." *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 595 (E.D. Va. 2006) (citation omitted). Here, McLain has had two full opportunities to state his claims, first in the Original Complaint and now in the Amended Complaint.

In preparing the Amended Complaint, McLain had ample notice of the defects that befell his Original Complaint. The Court's ruling dismissing the Original Complaint clearly outlined those defects. McLain failed to allege FCA liability from KBR's falsification of records because he did not "allege how [the] falsification of records may have been included or referenced in a claim for payment." (*See* Doc. 48, at 9.) Additionally, McLain failed to allege a false certification because no facts established that the payments were contingent on KBR's compliance with LOGCAP III. (*Id.* at 12–13.)

Nevertheless, the Amended Complaint is still silent on how the falsified logs or reports could have influenced the Government's decision to pay, and although McLain conclusorily adds

that payment was conditioned on LOGCAP III compliance, McLain has not adduced facts in support of that conclusion. In short, McLain's Amended Complaint suffers from the same defects as his Original Complaint. The constancy of those defects, despite notice and an opportunity to amend, suggests that further attempt at amendment would be futile.

## VIII. CONCLUSION

For the foregoing reasons, the Court **GRANTS** KBR's Motion to Dismiss. The Court further **DENIES** McLain leave to amend and **DISMISSES** the Amended Complaint **WITH PREJUDICE**.

This Order closes the case.

**IT IS SO ORDERED.**

ENTERED this _7th_ day of July, 2014.

Alexandria, Virginia
7 / 7 / 2014

/s/
Gerald Bruce Lee
United States District Judge

13